UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 11-12-GWU


KATHY IRENE WATTERS,                                                          PLAINTIFF,


VS.                                      **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB).  The appeal is

currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity?
    If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful
    activity, does he have any "severe" impairment or combination
    of impairments--i.e., any impairments significantly limiting his
    physical or mental ability to do basic work activities?  If not, a
    finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine
    whether the claimant's severe impairment(s) or combination of
    impairments meets or equals in severity an impairment listed

1

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

3

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the

ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

and analyze factors such as residual functional capacity, age, education and work

experience.

One of the residual functional capacity levels used in the guidelines, called

"light" level work, involves lifting no more than twenty pounds at a time with frequent

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all

these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry

small articles and an occasional amount of walking and standing.  20 C.F.R. §

404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly

diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions  .  .  .  or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Kathy Irene Watters, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of being status post remote right knee arthroscopy with residuals, fibromyalgia, gastroesophageal disease, and a depressive disorder. (Tr. 15). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy,

and therefore was not entitled to benefits.  (Tr. 17-21).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE a series of hypothetical questions regarding a person of the plaintiff's age of 50, high school equivalency diploma, and work experience as a licensed practical nurse. (Tr. 46-8). Ultimately, the VE testified that such a person could perform jobs in the state and national economy if she were limited to lifting 20 pounds occasionally and 10 pounds frequently, with the option of sitting or standing at 30-minute intervals, in addition to having the following non-exertional restrictions.  She also:  (1) could not kneel, crawl, or climb ladders, ropes, or scaffolds; (2) could not operate foot controls with the right lower extremity; (3) could have no concentrated exposure to cold, wetness, humidity, or vibration; (4) could perform simple instructions in an object-focused work environment with small groups of coworkers and casual supervision; and (5) was able to adapt to routine work changes.  (Tr. 47-8).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to a range of physical and mental problems including depression, poor memory, fibromyalgia, constant pain in her legs, feet, hands, and back, forgetfulness, and high blood pressure.  (Tr. 142).

As the plaintiff points out in her brief, her treating family physician, Dr. Anjum Iqbal, submitted a "residual functional capacity questionnaire" dated February 19, 2009, in which she opined that her patient was limited to walking, standing, and sitting one hour each per day, with a need to alternate positions, and that she could "never/rarely" lift and carry up to 10 pounds.  (Tr. 446).  All postural activities were also limited to "never/rarely," and she could not use her feet and legs for repetitive movements as in operating foot controls.  (Tr. 447).  She also estimated that her patient would be absent from work more than six days per month.  Such limitations would clearly preclude substantial gainful activity.

In discussing the medical opinions in the case, the ALJ's only mention of this source was the brief comment that "Dr. A. Iqbal noted the claimant had difficulty arising from a seated position" and that the ALJ's functional capacity conclusions accommodated the restriction.  (Tr. 19).[1]

The Sixth Circuit has held that a decision by the Commissioner will not be upheld even if it is supported by substantial evidence if the Commissioner fails to follow his own regulations, where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004).  Wilson concerned the regulation at 20

---

[1]The ALJ's comment may be a reference to an office note by Dr. Iqbal from January, 2008.  (Tr. 339).

C.F.R. § 404.1527(d) which requires an ALJ to give "good reasons" where the opinion of a treating physician is not given controlling weight.   Under certain circumstances, the court has held that a violation of the regulation might amount to harmless error, such as where the treating source opinion is so patently deficient it could not possibly be credited, if the Commissioner adopts the opinion of a treating source, or where the goal of the regulation has been met even though the exact terms have not been complied with; e.g., when the supportability of a doctor's opinion is indirectly attacked by the ALJ's analysis of the physician's other opinions. Id. at 547; Hall v. Commissioner of Social Security, 148 Fed. Appx. 456, 461-62 (6th Cir. 2005); Nelson v. Commissioner of Social Security, 195 Fed. Appx. 462, 472 (6th Cir. 2006).

The present case is most similar to Bowen v. Commissioner of Social Security, 478 F.3d 742, 747 (6th Cir. 2007) in which the ALJ adopted an assessment contrary to a treating physician opinion without even mentioning the opinion of the treating source.  The court noted that while there might have been good reasons for discounting the treating source opinion, "another possibility is that the ALJ simply overlooked [the treating source] opinion altogether." Id. at 748.  This was a clear violation of § 1527(d).  The Bowen court went on to examine whether the ALJ had "indirectly attacked" the treating physician opinion, and concluded that he had not.

In the present case, the ALJ found that the medical evidence showed the existence of conditions that would be expected to produce the conditions reported by the claimant, namely joint pain and stiffness, neck and knee pain, "and that she is unable to work and stand on her feet." (Tr. 18). He did not find the plaintiff credible concerning the intensity, persistence, and limiting effects of the symptoms, citing primarily her daily activities and failure to follow prescribed treatment including exercise and Weight Watchers. (Id.). Social Security Ruling (SSR) 02-01p provides that the Commissioner will "rarely" use failure to follow prescribed treatment for obesity to deny benefits. Moreover, citing § 404.1530 of the regulations, it is noted that a claimant must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, absent an acceptable reason. It is not clear from any of the medical sources that losing weight and exercising would have restored the plaintiff's ability to work. In addition, the plaintiff, who had documented knee problems (Tr. 191, 193, 196, 212, 225, 407-8, 427-8, 430-42), testified that she had to keep her leg propped up above chest level (Tr. 36-8) and also had difficulty walking due to fibromyalgia and a bulging disc in the neck (Tr. 42-3). In light of all this, it would appear the plaintiff's statements regarding her limitations are supported by the treating physician. Therefore, to the extent that the ALJ may have been "indirectly attacking" the unmentioned treating source opinion, his analysis is not persuasive. The court concludes that this was not a "rare" case as in Nelson in

9

which the analysis met the goal but not the letter of the rule.  Bowen, 478 F.3d at 749.  The "good reasons" requirement has not been met, and a remand will be necessary for further consideration of the treating physician opinion.

The plaintiff also takes issue with the ALJ's treatment of an opinion from the plaintiff's treating psychiatrist, Dr. Syed Umar.  Dr. Umar submitted a letter in March, 2009 stating that he had treated the plaintiff since December, 2007 with a diagnosis of recurrent major depression and generalized anxiety disorder.  Previously, he had stated that the plaintiff had "extreme limitations on her ability to understand, remember, and carry out simple job instructions" and a "marked" limitation on her ability to interact appropriately with supervisors and coworkers, accept instructions and respond appropriately to criticism from supervisors, perform routine tasks at a consistent and appropriate pace without special supervision, maintain attention and concentration, demonstrate reliability, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and tolerate ordinary stresses associated with daily work activity.  (Tr. 395).

The ALJ rejected Dr. Umar's opinion.  He relied instead on state agency non-examining psychologists Stephen Scher and Jay Athy, who had previously reviewed the record and opined that Mrs. Watters would be "moderately" limited in the areas of (1) completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an

unreasonable number and length of rest periods, (2) accepting instructions and responding appropriately to criticism from supervisors, and (3) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr. 232-4, 300-2).  They felt that she would be able to understand and remember simple instructions, sustain attention to complete simple repetitive tasks for two-hour segments, tolerate small groups of coworkers and casual supervision in an object-focused work setting, and adapt to routine changes.  (Id.).  Their opinion, in turn, was partially based on the report of a one-time consultative examiner, Jessica Huett, Psy. D., who examined the plaintiff on October 3, 2007.  She diagnosed a depressive disorder, and opined that Mrs. Watters would have "moderate" limitations in her ability to tolerate the stress and pressure of day-to-day employment and respond appropriately to supervision, coworkers, and work pressures in a work setting.  (Tr. 230).

Generally, the opinion of a treating source such as Dr. Umar is entitled to greater weight than the opinion of one-time examiners such as Huett or non-examining sources such as Drs. Scher and Athy, and may be entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory techniques and not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 404.1527(d)(2).  SSR 96-6p indicates that opinions from state agency experts may be entitled to greater weight than treating or examining sources "if the

State agency medical . . . consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive knowledge than what was available to the treating source."

In the present case, the state agency reviewers did not have more information than the treating source.  Moreover, the ALJ's failure to include a restriction to sustaining attention for two-hour segments, as the state agency sources specified, makes it questionable whether all of even the non-examiners' restrictions were conveyed in the hypothetical question.  Ealy v. Commissioner of Social Security, 594 F.3d 504, 517 (6th Cir. 2010).  Since a remand is required because of the physical factors, these issues can also be addressed on remand.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 29th day of September, 2011.

Signed By:

G. Wix Unthank

United States Senior Judge